Mario Pittosti, J.
The plaintiffs, Carmen Lombardo and John Jacob Loeb, hereinafter called Lombardo and Loeb, are the composer and author of the song “ Seems Like Old Times ”. The defendant is the American Society of Composers, Authors *591 and Publishers, an unincorporated membership association, hereinafter called ASCAP, which grants licenses and collects royalties for the public performance for profit of the works of its member composers, authors and publishers of music, and allots its revenues among its members. Lombardo and Loeb are and have been for many years members of ASCAP.
This action is for specific performance, with appropriate accounting of the agreements between Lombardo and Loeb and ASCAP. These agreements provide, among other things, for the assignment by Lombardo and Loeb to ASCAP of the right to license public performances of their musical works and for the adoption by the writers classification committee of ASCAP of a system which would “ assure a fair, just and equitable distribution of royalties among the members ’ ’. This writers classification committee consists of 12 writer members of ASCAP’s board of directors. The standards by which this committee is to be guided are prescribed in the members’ individual agreements with ASCAP and in ASCAP’s articles of association. The articles provide that the classification committee “ shall take into consideration the number, nature, character and prestige of (a member’s) works # * * the length of time in which the works * * * have been a part of the catalog of the Society, and popularity and vogue of such works and also that “ primary consideration shall be given to the performance of the composition of members as indicated by objective surveys of performances ”. The membership agreements and articles of association further provide that disputes as to whether these standards have been applied by the committee in determining the classifications of the respective members shall be submitted to designated tribunals whose decisions “ shall be final, conclusive and binding upon him”. The articles of association further provide that classification protests shall be first considered by the writers classification committee, that an appeal therefrom shall then go to the board of appeals, a body composed of six elected members of ASCAP, and that a final appeal shall be permitted to a panel which is specially constituted for each case. “ The Panel, after considering any such appeal, may reverse the decision of the Board of Appeals and determine the classification of such member by a vote of not less than two-thirds of the Panel and further, ‘ ‘ in case of a reclassification of a member, such reclassification shall not be retroactive but shall become effective on the succeeding distribution ”.
In 1950, the writers classification committee adopted a standard called the “Theme Song Rule ” under which *592 Lombardo and Loeb had been assigned one performance point for such uses on each 90-minute radio broadcast and telecast. This standard was based upon a provision which stated that ‘1 a theme song will receive credit for one use on one program irrespective of the number of actual uses on that program ’
In 1953, Lombardo and Loeb claimed that they were entitled to one performance point each time the song or any part thereof was played as a theme in the body of ‘ ‘ Arthur Godfrey Time ” or alternatively that under the rule they were entitled to one performance point for each 15-minute segment of the broadcast.
Pursuant to the articles of association, Lombardo and Loeb filed their protests with the writers classification committee on the ground that they were entitled to a retroactive reclassification. This committee decided against Lombardo and Loeb and held they were bound by the ‘ ‘ Theme Song Bule ’ ’. Lombardo and Loeb appealed to the board of appeals which unanimously affirmed, and they then appealed to the panel. Several full hearings were had before the panel without protest against its jurisdiction or right to determine. The panel’s subsequent decision stated, among other things, that ‘ ‘ the Panel has considered itself an arbitration committee — concerned more with reaching an equitable decision than with rendering a legal interpretation, for which we are not qualified ”. The panel then proceeded by a divided vote to reverse the board of appeals and said: “ but in so doing, (the Panel) does not in any way imply agreement with the contention of the appellants that they should receive credit for one use on each one-quarter broadcast ’ ’. It went on to say that the credit for one use theretofore awarded Lombardo and Loeb should be assigned to the theme song use of their composition on the first hour of Arthur Godfrey Time and that they should be awarded ‘ ‘ credit for a partial use ” equal to “ a fraction of one point ” for the use of the song beyond the first hour of the broadcast, this fraction to be determined by the classification committee in the interest of equity to all members. The panel also held that the claim for retroactive application of its decision was barred by section 6-b of article 14 of the articles of association.
Thereafter, in carrying out the panel’s decision, the writers classification committee adopted a ‘ ‘ modification of distribution formula relating to theme songs ” under which credit of one tenth of a point was awarded for theme song uses beyond the first 60 minutes of any two-hour broadcasting period. Under this 11 modification ”, Lombardo and Loeb have received 1.1 for each Arthur Godfrey Time radio broadcast.
*593 It is clear to this court that by reason of their membership agreements and the articles of association, Lombardo and Loeb, as members of ASCAP, have agreed that all disputes over their classifications shall be submitted to designated tribunals whose decisions shall be “final, conclusive and binding”.
In the absence of bad faith or fraud, the decisions of the designated tribunals herein should not be interfered with by the court; nor should the court substitute its judgment for that of these tribunals on factual issues. Lombardo and Loeb contend, however, that the panel was vested only with the expressly limited power to reverse or affirm the decision of the board of appeals; and they say that only the reversal by the panel should be considered and enforced as though that vms all the panel held. They say the rest of the panel’s decision should be ignored. This, however, would be contrary to section 6-b of article 14 (articles of association), which expressly states that the panel may ‘1 reverse the decision of the Board of Appeals and determine the classification of such member ”. It would also be contrary to the panel’s attempt to “reach some fair way of compensating Mr. Loeb and Mr. Lombardo independently of making an interpretation of the rule”. This clearly permits the panel upon a reversal to itself determine the proper classification of the appealing member. In making such a determination, the panel is not bound by any rules of law; and this is particularly true since the agreements expressly provide for determination of the members ’ classifications in “ a fair, just and equitable manner In fact, at the second hearing, the members of the panel inquired whether they might base their decision on “ equitable considerations ” and “ reach some fair way of compensating Lombardo and Loeb without interpreting the rule before them ”. Neither Lombardo nor Loeb nor their attorney objected to this. In fact, their attorney affirmatively indicated concurrence in such standards.
The law is quite clear at this time that a party who by his conduct before such a board or panel has indicated his acquiescence in the scope of the proceedings cannot thereafter challenge those proceedings as ultra vires. (Matter of Dembitzer [Gutchen], 3 A D 2d 211, 213, 215, affd. 3 N Y 2d 851.) It follows, therefore, that the panel had the power to determine the classification of Lombardo and Loeb in a “ fair, just and equitable manner ’ ’ according to their sense of equity.
After the panel’s decision, the writers classification committee had the right to adopt the modification now in dispute. The panel was the highest tribunal in ASCAP’s hierarchy and once it had determined the principle upon which Lombardo and *594 Loeb should be compensated it could send the matter to the writers classification committee for further proceedings subject, of course, to subsequent review and revisions by the panel. However, Lombardo and Loeb chose not to appeal the classification committee’s modification.
Then, too, Lombardo and Loeb claim that, assuming the panel’s decision to have been a proper determination, their classifications should have been applied retroactively. However, as the panel itself pointed out in its decision, section 6-b of article 14 provides: “In case of a reclassification of a member, such reclassification shall not be retroactive but shall become effective on the succeeding distribution.” Also, among the many equitable reasons for denying retroactivity, it would be unfair to the thousands of other members of AS CAP. Lombardo and Loeb themselves, as members of AS CAP for over 25 years, have benefited over these years from the application of this rule to other members whose classifications have been improved by the direction of the tribunals as in this case. And, further, all of AS CAP’s income each year is distributed to the members in that year. This practice, of course, has been based upon the nonretroactivity rule. If any retroactive payment had to be made to Lombardo and Loeb, it would not come out of any reserves but ‘ ‘ rather ’ ’ out of the current royalties of other members.
As for the “ Theme Song Rule ” itself, the court finds that this is an equitable standard both for Lombardo and Loeb and for the thousands of other members of AS CAP. The rule does distinguish among regular performance songs, jingles, theme songs and partial playings of theme songs. These songs and jingles are primarily for the purpose of identifying radio programs and commercial products advertised thereby. There is a great deal of repetition of snatches of these theme songs several times on a single program. In other words, the theme serves to identify the particular program or performer in the public mind, and only enough of such song is played as is necessary for identification and for arousing of interest. The theme song is not used for the purpose of primary entertainment, and it does not have the same influence upon the audience or viewer as a song regularly played as part of the main program. The “ Theme Song Rule ” does accord with section 6 which requires that ‘ ‘ primary consideration ’ ’ shall be given to ‘ ‘ the performance of the composition of members ’ ’, and this court must not substitute its judgment for that of the writers classification committee, a body of 12 expert writer members of AS GAP’s board of directors.
*595 The “Theme Song Bule” has been more than fair for Lombardo and Loeb. In 1955 (the last year for which figures were available at the time of the trial) their song “ Seems Like Old Times ” got more performance credits than any other song in ASOAP’s repertory. It received three and four times as many performance credits as such great songs as “ Begin the Beguine ”, “ Blue Skies ” and “ Star Dust ”, which Lombardo admitted to be “ much more popular ” than “ Seems Like Old Times ”. Then, too, Lombardo and Loeb have received, primarily on this one song, more than $340,000 from ASOAP since the “ Theme Song Bule ” went into effect in 1950.
The adoption and application of the standard and retro-activity demanded by Lombardo and Loeb would be devastating upon ASOAP and its thousands of other members. They would be inequitable and unjust to every other member of ASOAP.
Therefore, since there is no suggestion that the decision of the panel was based upon bad faith or fraud and since, under the circumstances, the ‘ ‘ Theme Song Bule ’ ’, as adopted in 1954 by the writers classification committee pursuant to the panel decision, is fair and equitable to Lombardo and Loeb and all the other members of ASOAP, the decision of this court is in favor of the defendant ASOAP.
The complaints are, therefore, dismissed.
This is the decision of the court pursuant to section 440 of the Civil Practice Act.
Submit judgment on notice.